IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WILLIAM J. RICHARDSON,          *

   Plaintiff,                   *

     v.                         *       Civil Action No.: RDB 06-2594

SELECTIVE INSURANCE GROUP, INC,     *
*et al.*,                            *

   Defendants.                  *

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

## **MEMORANDUM OPINION**

This action arises out of a two-count Complaint filed by Plaintiff William J. Richardson ("Plaintiff" or "Richardson") against Defendants Selective Insurance Group, Inc. ("SIGI") and Selective Insurance Company of America ("SICA") (collectively, "Defendants"). In Count I, Plaintiff contends that SIGA and SICA, as his former employer(s), negligently conducted an internal investigation of sexual harassment allegations made against Plaintiff by one of his co-employees. In Count II, Plaintiff contends that, after he was fired, Defendants tortiously interfered with prospective economic advantage by furnishing defamatory references to prospective employers. Currently pending before this Court is the Motion to Dismiss filed by Defendants. (*See* Paper No. 10.) Defendants contend that Plaintiff's negligence claim fails as a matter of law because his employment was at-will. Defendants also argue that Plaintiff's claim for tortious interference is barred by the statute of limitations. This Court has jurisdiction pursuant to 28 U.S.C. § 1332. The issues are fully briefed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2004). For the reasons stated below, Defendants' Motion to Dismiss is DENIED.

**FACTUAL BACKGROUND**

In August 2002, Plaintiff began his employment as a "manager" with Defendants.[1] (Compl. ¶ 7.) One of the employees under Plaintiff's supervision was Virginia Dennison. Plaintiff contends that "[f]rom almost the start of [his] employment, [he] was told to scrutinize closely Dennison's performance which was unacceptable." (*Id*. at ¶ 8.) In general, Plaintiff found Ms. Dennison's performance "wanting" and "began to take steps to document that poor performance." (*Id*.)

By September 19, 2003, Plaintiff alleges that he had "documented sufficient performance deficiencies" that two other managers were "in agreement that Dennison should be terminated." (*Id*. at ¶ 9.) Another manager, however, was "of the opinion that Dennison should have more guidance." (*Id*.) Ultimately, it was decided that Ms. Dennison would be fired on October 3, 2003. (*Id*.)

On September 22, 2003, Plaintiff attended a dinner hosed by Defendants' "Maryland defense firm—Semmes, Bowen, and Semmes" in Ocean City, Maryland. (*Id*. at ¶ 10.) Plaintiff contends that, during that dinner, he "engaged in no inappropriate behavior." (*Id*. at ¶ 12.)

On October 3, 2003, Plaintiff was "suddenly fired" by two of the managers involved in the decision to terminate Ms. Dennison. (*Id*. at ¶ 11.) Although "nobody had approached [Plaintiff] or questioned him about the events of that evening," Plaintiff was told that "he was being fired for 'inappropriate behavior' at the dinner." (*Id*.)

Plaintiff contends that Ms. Dennison submitted a complaint about Plaintiff to

---

[1] The parties' submissions neither describe Plaintiff's duties in his role as "manager" nor identify the State in which Plaintiff was employed.

Defendants' corporate office. (*Id*. at ¶ 13.) According to Plaintiff, that "complaint was not thoroughly investigated, contrary to Selective's policies about providing a thorough and impartial investigation to protect the rights of both the complaining individual and the individual accused of the workplace transgression." (*Id*. at ¶ 14.) After Plaintiff began searching for a new position in the insurance field, he alleges that Defendants provided references to prospective employers that "included statements that Richardson had committed sexual harassment in the workplace and had problems with excessive alcohol consumption." (*Id*. at ¶ 27.) Plaintiff maintains that such statements are false. (*Id*. at ¶ 28.)

On October 2, 2006, Plaintiff filed his Complaint against Defendants. On January 25, 2007, Defendants filed the subject Motion to Dismiss. (Paper No. 11.) Discovery has not commenced.

## STANDARD OF REVIEW

Defendant seeks to dismiss Plaintiff's action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. "'[T]he purpose of Rule 12(b)(6) is to test the legal sufficiency of a complaint'" and not to "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999)). As the legal sufficiency of the complaint is challenged under a Rule 12(b)(6) motion, the court assumes "the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." *Eastern Shore Mkts. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)). A Rule 12(b)(6) motion to dismiss "should only be granted if, after accepting all well-pleaded

allegations in the plaintiff's complaint as true, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.,* 248 F.3d 321, 325 (4th Cir. 2001); *see also Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005). Furthermore, the "Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Rather, Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal*, 248 F.3d at 325-26; *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)). However, while "notice pleading requires generosity in interpreting a plaintiff's complaint . . . generosity is not fantasy." *Bender v. Suburban Hosp., Inc.*, 159 F.3d 186, 191 (4th Cir. 1998).

In reviewing the complaint, the court accepts all well-pleaded allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Venkatraman*, 417 F.3d at 420*; Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir. 1997); *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). The court must disregard the contrary allegations of the opposing party. *A.S. Abell Co. v. Chell*, 412 F.2d 712, 715 (4th Cir. 1969). However, in considering a motion to dismiss, the court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments" nor "the legal conclusions drawn from the facts." *Eastern Shore Mkts., Inc.,* 213 F.3d at 180; *see also Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, 329 F. Supp. 2d 574, 578 (D. Md. 2004).

**DISCUSSION**

**I.      The Complaint.**

The Complaint asserts two causes of action.  In Count I, Plaintiff contends that Defendants' failure to carry out a reasonable internal investigation of Ms. Dennison's accusations against Plaintiff constitutes negligence. (Compl. ¶¶ 15-22.)  In Count II, Plaintiff maintains that Defendants tortiously interfered with prospective economic advantage by providing defamatory references to Plaintiff's prospective employers.  (*Id*. at ¶¶ 23-35.)

**II.     Motion to Dismiss.**

   **A.    Plaintiff's Former Employer.**

Initially, Defendants contend that Selective Insurance Company of America ("SICA") was Plaintiff's employer, not Selective Insurance Group, Inc. ("SIGI").[2]  Specifically, Defendants' initial papers provide nothing more than the following four sentences regarding whether SIGI is appropriately named as a defendant:

> Most notably, Plaintiff has failed to identify his employer.  It is a matter of public knowledge that SIGI is the holding company which owns the stock of all the Selective affiliated insurers, including SICA.  In turn, SICA is the servicing carrier for all of the affiliated carriers.  SICA was Plaintiff's employer, not SIGI.  Therefore, Plaintiff's entire Complaint should be dismissed with Prejudice as to SIGI.

(Defs' Mem. Supp. Summ. J. p. 1.)  In his opposition papers, Plaintiff does not address this issue.  Finally, in their reply papers, Defendants supplement their initial argument by submitting documentary evidence—including portions of SIGI's 2005 Annual Report and SICA's benefits

---

[2]     The factual determination of this question will await discovery in this case or an agreement of the parties.

handbook—and an analysis of the relevant legal principles. (*See* Defs' Reply pp. 2-5 & Exs. 1-2.)

Rule 12(b) of the Federal Rules of Civil Procedure provides:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and *all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56*.

Fed. R. Civ. P. 12(b) (emphasis added); *see also Gadsby by Gadsby v. Grasmick*, 109 F.3d 940, 949 (4th Cir. 1997) ("Because the district court considered matters outside of the pleadings, we shall treat its decision as one to grant summary judgment"); *Jordan v. Washington Mut. Bank*, 211 F. Supp. 2d 670, 674 (D. Md. 2002) ("Even if the Court were to conclude that it should at this early stage of the case consider matters outside the pleading, the Court would be required to give the parties a reasonable opportunity to present all material made pertinent to such a motion by Rule 56.") (internal quotation marks and citation omitted)).

After reviewing the parties' submissions, this Court is unwilling to treat Defendants' motion to dismiss as one for summary judgment at this early stage in the case. Plaintiff has not been afforded a reasonable opportunity to respond to the evidence and legal argument submitted with Defendants' reply papers. That evidence, moreover, does not conclusively establish that SIGI was *not* Plaintiff's employer. For example, there is no affidavit or other evidence addressing the five factors that, according to Defendants, govern whether an employment

relationship exists between Plaintiff and SIGI.[3]  Accordingly, Defendants' Motion to Dismiss the Complaint with respect to Defendant Selective Insurance Group, Inc. is DENIED.

### B. Negligence Claim—Count I.

In Count I, Plaintiff alleges that Defendants' failure to perform a reasonable investigation of "a charge of inappropriate behavior" against Plaintiff constitutes negligence. (Compl. ¶ 20.) Defendants move to dismiss Count I on grounds that Plaintiff cannot prove negligence because Defendants owed no duty to Plaintiff.

The Court of Appeals of Maryland has emphasized that there can be no claim for negligence "'where there is no duty that is due; for negligence is the breach of some duty that one person owes to another.  It is consequently relative and can have no existence apart from some duty expressly or impliedly imposed.'" *Bobo v. State*, 697 A.2d 1371, 1375 (Md. 1997) (quoting *West Virginia Cent. & P. Ry. Co. v. State*, 54 A. 669, 671-672 (Md. 1903)).  Maryland

---

[3]   As the source of this Court's jurisdiction over this case is based on diversity of citizenship, the principles set forth in *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) require application of the law of the State of Maryland to questions of substantive law.  As Defendants point out in their reply papers:

> This Court has traditionally considered five criteria in determining whether or not an employer/employee relationship exists between two parties.  These criteria, developed from the common law standard for determining the master/servant relationship, include (1) the power to select and hire the employee, (2) the payment of wages, (3) the power to discharge, (4) the power to control the employee's conduct, and (5) whether the work is part of the regular business of the employer. . . .

*Whitehead v. Safway Steel Products, Inc.*, 497 A.2d 803, 808-809 (Md. 1985) (citations omitted); *see also Great Atlantic & Pacific Tea Co., Inc. v. Imbraguglio*, 697 A.2d 885, 894 (Md. 1997) (noting that, of the five criteria identified above, "control is paramount and, in most cases, decisive.") (citation omitted).

7

courts have described a tort duty as "an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection." *Eisel v. Bd. of Educ. of Montgomery County*, 597 A.2d 447, 452 (Md. 1991) (internal quotation marks and citations omitted). Whether a tort duty is owed is a question of law for the court. *See Bobo*, 697 A.2d at 1376.

In this case, Plaintiff appears to rely on specific provisions of an employment handbook to argue that Defendants owed a duty of care to him. As a preliminary matter, this Court may consider those provisions without converting Defendants' Motion to Dismiss into one for summary judgment. As this Court has previously explained:

> Generally, then, when documents which were not appended to the Complaint are submitted to the court in connection with a Motion to Dismiss pursuant to Rule 12(b)(6), those documents either are not considered or the motion is converted to a summary judgment motion with proper notice to the parties. *An exception to the general rule is made for documents which are referred to in the Complaint and upon which Plaintiff relies in bringing the action.*

*Biospherics, Inc. v. Forbes, Inc.*, 989 F. Supp. 748, 749 (D. Md. 1997) (emphasis added; citations omitted), *aff'd*, 151 F.3d 180 (4th Cir. 1998). The provisions of the employment handbook at issue in Count I—*i.e.*, those that relate to internal investigations of sexual harassment allegations—fall squarely within the exception identified above. *See New Beckley Min. v. Int'l Union, UMWA*, 18 F.3d 1161, 1164 (4th Cir. 1994) ("New Beckley referred to the constitution in its complaint and its proposed amended complaint to justify its cause of action under 1962©."); (*see also* Compl. ¶ 17 (alleging that Defendants' "internal policies and procedures" required that "the investigation was to be undertaken in a fair and impartial manner, to protect the rights of both the complaining individual and [Plaintiff]."); Pl.'s Opp. p. 6

("Contrary to established company policies and training, Selective failed to use procedures that were necessary to protect both the accuser and the accused.").)

At this early stage in this litigation, the parties have not had the opportunity to brief in appropriate detail the question whether Defendants owed Plaintiff a duty of care to conduct a reasonable investigation with respect to sexual harassment allegations made against Plaintiff during the time of his employment.  This Court notes that, in certain contexts, Maryland courts are not receptive to claims that a duty of care arises out of an employment handbook.[4]  In other contexts, however, Maryland courts have found that a duty of care may be imposed.[5]  This Court has considered the arguments and evidence submitted by the parties and concludes that final

---

[4] *See*, *e.g.*, *Fournier v. USF & G*, 569 A.2d 1299, 1304 (Md. Ct. Spec. App. 1990) (concluding that "appellant could not justifiably rely on any indication in the employee manual that his employment would only be terminated after certain procedures were followed."); *Hrehorovich v. Harbor Hosp.*, 614 A.2d 1021, 1032 (Md. Ct. Spec. App. 1992) ("In *Castiglione*, we held that reliance on expressed personnel policies and procedures is precluded where those same policies clearly and effectively disclaimed any contractual intent.") (citing *Castiglione v. Johns Hopkins Hosp.*, 517 A.2d 786, 792-93 (Md. Ct. Spec. App. 1986)).

[5] *See*, *e.g.*, *Heckrotte v. Riddle*, 168 A.2d 879, 882 (Md. 1961) ("The mere negligent breach of a contract, absent a duty or obligation imposed by law *independent of that arising out of the contract itself*, is not enough to sustain an action in tort.") (emphasis added); *Champion Billiards v. Hall*, 685 A.2d 901 (Md. Ct. Spec. App. 1996) ("In determining whether a tort duty should be recognized in a particular context, two major considerations are: the nature of the harm likely to result from a failure to exercise due care, and the relationship that exists between the parties. Where the failure to exercise due care creates a risk of economic loss only, courts have generally required an intimate nexus between the parties as a condition to the imposition of tort liability. This intimate nexus is satisfied by contractual privity or its equivalent.")(quoting *Jacques v. First Nat'l Bank*, 515 A.2d 756, 759-60 (Md. 1986)), *cert. denied*, 690 A.2d 523 (Md. 1997); *see also Weisman v. Connors*, 540 A.2d 783, 790-94 (Md. 1988) (false statements made during precontractual negotiations for a contract involving employment of high-level executive established a relationship that was sufficient to impose a tort duty of care); *Martens Chevrolet, Inc. v. Seney*, 439 A.2d 534, 537-39 (Md. 1982) (evidence sufficient to submit claim to jury where misrepresentations made during precontractual negotiations for contract involving sale of automobile distributorship).

determination of this matter must await discovery.  This issue may be addressed in the filing of motions at the conclusion of discovery in this case.  Accordingly, Defendants' Motion to Dismiss is DENIED with respect to Count I.

### C. Tortious Interference Claim—Count II.

In Count II, Plaintiff maintains that Defendants tortiously interfered with prospective economic advantage by providing defamatory references to Plaintiff's prospective employers. (Compl. ¶¶ 23-35.)  The parties dispute *which* statute of limitations governs Count II.  Plaintiff contends that this claim is governed by the three-year statute of limitations applicable to civil actions generally.  Defendants contend that, because Count II is based on a defamation claim, the one-year statute of limitations applicable to actions for libel or slander must be applied.

In Maryland, a civil action generally must be filed within *three* years from the date it accrues.  *See* Md. Code Ann., Cts. & Jud. Proc. § 5-101 (West 2007) ("A civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced.").  A cause of action for defamation, however, must be filed within *one* year from the date it accrues.  *Id*. at § 5-105 ("An action for assault, libel, or slander shall be filed within one year from the date it accrues."); *see also Poffenberger v. Risser*, 431 A.2d 677, 680 (Md. 1981) (under the discovery rule, which is generally applicable to all claims in Maryland, "the cause of action accrues when the claimant in fact knew or reasonably should have known of the wrong.").

In *Allen v. Bethlehem Steel Corp.*, 547 A.2d 1105 (Md. Ct. Spec. App. 1988), *cert. denied*, 550 A.2d 1168 (Md. 1988), the Maryland Court of Special Appeals considered whether the tort of false light invasion of privacy is governed by the three-year statute of limitations

10

applicable to civil actions generally or the one-year statute of limitations applicable to actions for libel or slander must be applied. *Id*. at 1108. Although a different tort was involved, the legal issues resolved by *Bethlehem Steel* are essentially identical to those at bar. As the Court of Special Appeals explained:

> Although neither appellate court of this State has addressed the question of whether the "false light" action is governed by the statute of limitations applicable to defamation actions or to an invasion of privacy, the issue has been addressed in two United States District Court of Maryland cases. There in *Smith v. Esquire, Inc.*, 494 F. Supp. 967, 970 (D. Md. 1980), the Court said: "[W]here the underlying 'false light' relied upon arises out of an alleged defamatory statement, the proper course of action is actually defamation and accordingly the case, whether stated in terms of defamation or invasion of privacy is governed by the one year statute of limitations."
>
> The Court went on to state that "to hold otherwise would allow a plaintiff, in any defamation action where there has been a general publication, to avoid the otherwise applicable one year statute merely by phrasing the cause of action in terms of invasion of privacy." *See also Robinson v. Vitro Corp.*, 620 F. Supp. 1066, 1070-71 (D. Md. 1985).
>
> We disagree with *Smith*. What the district court judge said in *Smith* may be true, but the Maryland statute of limitations is vividly clear. An action for libel and slander shall be filed within one year of the date it accrues. Courts Art. § 5-105. Other tort actions shall be filed within three years of the date they accrue. Courts Art. § 5-101. Nowhere in § 5-101 does it provide an exception for "false light" cases. Even though we recognize the district court judge's view as to how the statute of limitations will be avoided, that "loophole" must be plugged by the Legislature. Limitation statutes are generally strictly construed. *Decker v. Fink*, 422 A.2d 389 (Md. Ct. Spec. App. 1980), *cert. denied*, 289 Md. 735 (Md. 1981). Courts Art. § 5-101 means presumably what it says, and we decline to rewrite it so as to proscribe the bringing of a "false light" case after a period of one year.

*Allen*, 547 A.2d at 1108; *but cf. Millison v. Wilzack*, 551 A.2d 899, 902 (Md. Ct. Spec. App.

1989) (acknowledging "that it is not the manner in which an action is characterized, but, rather, its essential characteristic, that determines whether a statute of limitations applies.") (citation omitted).[6] The *Bethlehem Steel* analysis applies with equal force to the case at bar. As a result, this Court finds that Plaintiff's cause of action for tortious interference with prospective economic advantage is governed by the three-year statute of limitations set forth in Md. Code Ann., Cts. & Jud. Proc. § 5-101. Accordingly, Defendants' Motion to Dismiss is DENIED with respect to Count II.[7]

## **CONCLUSION**

For reasons stated above, Defendants' Motion to Dismiss is DENIED. A separate Order follows.

Date: May 31, 2007

/s/
Richard D. Bennett
United States District Judge

---

[6] In general, courts are split on the question whether tortious interference claims accomplished through defamatory statements are actionable in their own right or subsumed within the category of defamation. *See*, *e.g.*, *Wilkerson v. Carlo*, 300 N.W.2d 658, 634 n.3 (Mich. Ct. App. 1980) (collecting cases); *see also* Annotation: What statute of limitations governs action for interference with contract or other economic relations, 58 A.L.R.3d 1027.

[7] Defendant does not contend that Count II of the Complaint is barred under the three-year statute of limitations set forth in § 5-101, just the one-year limitations period set forth in § 5-105. (*See* Def.'s Mem. Supp. Mot. Dismiss p. 12 ("Since Plaintiff had knowledge of the alleged defamatory remarks on October 2, 2003, his defamation claim accrued in October of 2003, more than one year before he filed his tort claim, and it is therefore barred by the statute of limitations.") (citations omitted).)